```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
POLICE OFFICERS FOR A PROPER            :
PROMOTIONAL PROCESS,                    :
BRIAN ANDREWS, MATTHEW                  :    Case No. 11-civ.-7478 (LTS)
BINKOWITZ, JERARDO FREDELLA,            :
JAMES GIAGUZZI, ROCENDO GIL,            :
DONALD GOLDING, DANIEL GRABER,          :    COMPLAINT
HENRY LOSADA, CHRISTOPHER               :
MCNERNEY, CHRISTOPHER                   :
NAPOLITANO, and JOHN                    :
O'SULLIVAN,                             :
                                        :
                  Plaintiffs,           :    (ECF Case)
                                        :
      v.                                :
                                        :
PORT AUTHORITY OF NEW                   :
YORK AND NEW JERSEY,                    :
                                        :
                  Defendant.            :
-----------------------------------------------------------X
```

Plaintiffs, Police Officers for a Proper Promotional Process ("POPPP"), Brian Andrews, Matthew Binkowitz, Jerardo Fredella, James Giaguzzi, Rocendo Gil, Donald Golding, Daniel Graber, Henry Losada, Christopher McNerney, Christopher Napolitano, and John O'Sullivan by their attorneys Pedowitz & Meister, LLP, allege as follows for their Complaint against Defendant, the Port Authority of New York and New Jersey (the "Port Authority"):

## NATURE OF ACTION

1. This action arises from the deprivation of rights secured to the Plaintiffs pursuant to the United States Constitution, Article 1 §10 and the Fifth and Fourteenth Amendments, §1983 of Title 42 of the United States Code, and pursuant to the Constitutions of New York, N.Y. Const. Art. 5 §6, and New Jersey, N.J. Const. Art. 7, §1, which guarantee that government employees will be promoted according to merit and fitness. The Port Authority promulgated a policy and procedure which was ostensibly intended to assure the public and its police officers that promotions in 2011 to the rank of Sergeant would be made fairly and based on merit and fitness. In fact, among other things: (i) the secret oral interview questions were disclosed in advance to select candidates by certain ranking officers; and (ii) officers gave advice to select candidates with respect to how the oral interview questions should be answered; and (iii) the objective criteria of officer attendance records was not applied equally; and (iv) the objective criteria of officer disciplinary charges was not applied equally; and (v) certain officers obtained preferential treatment because of improper influence put forward on their behalf; and (vi) the requirement that promotions be by merit and fitness was not adhered to.

2. Plaintiffs seeks declaratory and injunctive relief, promotions to Sergeant for the Individual Plaintiffs complete with back pay, benefits, and seniority retroactive

to the date on which the promotions were first made, damages, attorney fees, and other appropriate relief. Additionally, Plaintiffs seek the appointment of a special master to devise, implement and oversee a fair promotional system for the Port Authority's police department.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to Article 1 §10 and the Fifth and Fourteenth Amendments, of the U.S. Constitution, the Declaratory Judgment Act, 28 U.S.C. § 2201, and 28 U.S.C. § 1331. This court has supplemental jurisdiction over Plaintiffs' state law claims, inter alia, those arising under the New York and New Jersey State Constitutions.

4. As the unlawful employment practices complained of herein occurred, and Defendant regularly does business, within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1392 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5. Plaintiff, POPPP, is an unincorporated association based in the State of New York and is comprised solely of individuals who currently are, and at all times relevant hereto were, employed as police officers in good standing by Defendant. Each officer who is a member of Plaintiff POPPP passed Defendant's 2011 Sergeant's Promotional Examination, and each was included on the sub-list of the

60 officers created by Defendant to be given first consideration for promotion to the rank of Sergeant. The Individual Plaintiffs, as hereinafter defined, comprise the only members of POPPP.

6. Plaintiff, Brian Andrews ("Andrews"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Andrews having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

7. Plaintiff, Matthew Binkowitz ("Binkowitz"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Binkowitz having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

8. Plaintiff, Jerardo Fredella ("Fredella"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Fredella having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

9. Plaintiff, James Giaguzzi ("Giaguzzi"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Giaguzzi having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

10. Plaintiff, Rocendo Gil ("Gil"), is, and at all times material hereto was, a Port

4

Authority police officer and a member of POPPP. In spite of Gil having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

11. Plaintiff, Donald Golding ("Golding"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Golding having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

12. Plaintiff, Daniel Graber ("Graber"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Graber having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

13. Plaintiff, Henry Losada ("Losada"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of Losada having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

14. Plaintiff, Christopher McNerney ("McNerney"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of McNerney having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

15. Plaintiff, Christopher Napolitano ("Napolitano"), is, and at all times material

hereto was, a Port Authority police officer and a member of POPPP. In spite of Napolitano having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

16. Plaintiff, John O'Sullivan ("O'Sullivan"), is, and at all times material hereto was, a Port Authority police officer and a member of POPPP. In spite of O'Sullivan having been interviewed and having met all of the criteria for promotion to Sergeant, he was unfairly and improperly denied promotion.

17. Andrews, Binkowitz, Fredella, Giaguzzi, Gil, Golding, Graber, Losada, McNerney, Napolitano and O'Sullivan are hereinafter collectively referred to as the Individual Plaintiffs.

18. The Individual Plaintiffs each perform the conventional and stable duties of the functionaries of civil government. Their positions as police officers do not fall within the realm of those responsibilities performed by private enterprise.

19. The Individual Plaintiffs are aware of police officers who have been retaliated against for taking action against the Port Authority and fear that they will be retaliated against for bringing this action.

20. Defendant, Port Authority of New York and New Jersey (cited variously herein as "Defendant" or the "Port Authority") is a bi-state transportation agency created with the consent of the United States Congress pursuant to Article 1, §10 of the United States Constitution, that manages the bridges, tunnels, bus terminals,

airports, Port Authority Trans-Hudson (PATH) and seaports in the New York metropolitan area. At all relevant times, the Port Authority was and is a state actor, has employed over 1,000 police officers, and has been continuously, and is now, doing business in the States of New York and New Jersey. The Port Authority is also a Federal Actor as the U.S. Government was one of its creators.

21. The Port Authority is a municipal corporate instrumentality within the meaning of the laws of New York and New Jersey. The Port Authority's power derives from the consent of Congress and from the States of New York and New Jersey, the latter two of which appoint the twelve commissioners that govern the Port Authority - six are selected by each of the participating states. The Commissioners' actions are, in turn, subject to veto by the governor of either state. Further, in the event the Port Authority's revenues are inadequate to meet its expenses, each state is obligated only to pay, in equal amounts, for the Port Authority's salaries, office and other administrative expenses.

## FACTUAL ALLEGATIONS

### Composition of the Port Authority

22. The Port Authority has a multi-billion dollar annual budget. It maintains an active governmental police force complete with the authority, <u>inter alia</u>, to issue traffic tickets and summonses returnable respectively in the courts of the states of New York and New Jersey, to conduct criminal investigations and make arrests,

and to temporarily incarcerate people.

23. The Port Authority receives millions of dollars of funding each year from the U.S. Government to support the efforts and training of the Port Authority's police department. On information and belief the Port Authority has not told its federal funding sources that its selection of candidates for the position of Sergeant is not based on merit and fitness; or that the questions used during its oral interview of candidates are told in advance to some candidates and not others; or that it gives preferential treatment in promotions to those whom have influential persons speak on their behalf; or that it allows promotions to be made in violation of its espoused policies and procedures.

24. On information and belief the federal funding sources that provide money to the Port Authority would not do so, or would curtail the amounts given, if they knew that the Port Authority's procedures for the promotion of Officers to Sergeant suffered from the many deficiencies complained of herein.

25. The Constitutions of the State of New York and of the State of New Jersey both require that appointments to the civil service be based on merit and fitness and such requirements are binding on the states and their creations. The term "civil service" as used in both Constitutions means governmental employment.

26. Neither New York nor New Jersey has or had the authority to create an entity, like the Port Authority, that violates directives provided in its respective

Constitution. The Port Authority cannot act in violation of the Constitutions of either the State of New York or the State of New Jersey.

27.  The public policy of both the States of New York and of New Jersey is that employees in governmental service, such as the Individual Plaintiffs, shall be selected and promoted on the basis of merit and fitness. The Constitution of each state mandates such.

### Port Authority Police Force

28.  The Port Authority maintains a Police Force to protect all facilities owned by the Port Authority, to maintain order, and to enforce state and city laws at these facilities.

29.  Port Authority police officers are designated by statute as police officers of both New York and New Jersey.

30.  Port Authority police officers are part of the New York State and Local Police and Fire Retirement System which has more than 34,800 civil service employee members from across New York State.

31.  Port Authority police officers have law enforcement jurisdiction in New York and New Jersey and are permitted to serve warrants, make arrests, use physical and deadly force, carry and use firearms, carry and use handcuffs, issue summonses, engage in criminal investigations, employ counterterrorism strategies, and participate in aircraft rescue, firefighting, and emergency services.

32. Port Authority police officers begin their careers as uniformed officers.

33. Both uniformed police officers and detectives are supervised directly by police officers who have obtained the rank of "Sergeant" or "Detective Sergeant".

34. The rank of Sergeant is the first official supervisory level in the leadership hierarchy of the Port Authority police department. There are other supervisory ranks above the rank of Sergeant and the pay scale for each progressively higher rank in the hierarchy is higher than the rank below.

35. Sergeants are paid a base salary that is higher than that paid to uniformed officers.

36. A police officer cannot be promoted to higher ranks without first being promoted to Sergeant.

37. To qualify for promotion, officers must be placed on the Police Sergeant Eligible List ("Eligibility List").

38. On information and belief, pursuant to its union contracts the Port Authority currently has approximately 21 vacancies for the position of Sergeant.

### The 2011 Port Authority Sergeant Promotional Process

39. On March 3, 2010, the Port Authority announced that it would be evaluating officers for placement on the Eligibility List for Promotion.

40. In order to be placed on the Eligibility List, police officers needed to meet various experience, attendance, and discipline requirements and had to pass a

written examination.

41. Specifically, to be placed on the Eligibility List, Officers: needed at least three (3) years of experience as of April 17, 2010; were required to have an absence record consisting of less than 5 sick occasions or less than 13 days lost in the 12 months prior to March 3, 2010; and could have no pending disciplinary charges.

42. The 2011 Eligibility List consists of 465 police officers, including the Individual Plaintiffs, and each police officer on the list is believed to have met the requirements for being placed thereon.

43. On June 15, 2011, the Port Authority announced its desire to promote officers by issuing a job posting (the "Posting") "seeking to identify qualified candidates for the position of Police Sergeant."

44. The Posting stated that the eligibility requirements for these positions were as follows:

    a. Must be on the Police Sergeant Eligible List, dated March 1, 2011;

    b. Must meet all promotional screening criteria on the Police Sergeant Roster Promotion/Developmental Appraisal form; and

    c. Must meet attendance standards.

45. The Posting stated that the Port Authority would undergo "[a] random